**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERTO JOSEPH, *on behalf of himself, FLSA Collective Plaintiffs*, and the Class,<br><br>Plaintiff,<br><br>v.<br><br>SECURITY USA, INC. and RAMI HAHITTI,<br><br>Defendant. | Case No.: 1:26-cv-04693<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff ROBERTO JOSEPH ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this First Amended Class and Collective Action Complaint against Defendant SECURITY USA, INC. ("Corporate Defendant") and Defendant RAMI HAHITTI ("Individual Defendant") (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he

and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to time-shaving, (2) unreimbursed uniform maintenance costs, (3) unpaid spread of hours premiums; (4) statutory penalties, (5) liquidated damages; and (6) attorneys' fees and costs.

3. On an individual basis, Plaintiff alleges that Defendants failed to pay him the hourly wage rates that Defendants agreed to pay him. By failing to pay the promised wage rates, Defendants: (1) breached Plaintiff's employment contract and (2) unjustly enriched themselves at the expense of Plaintiff.

4. On an individual basis, Plaintiff additionally alleges that Defendants unlawfully retaliated against him, in violation of the FLSA and the NYLL, shortly after Plaintiff made a lawful complaint concerning his wages and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

5. Defendants operate a security and private investigation company which provides services to sites throughout New York, New Jersey, and Florida.

6. Plaintiff, potential collective members, and putative class members are current and former security guards and other similarly positioned employees of Defendants and were victims of Defendants' schemes to underpay employees. Specifically, despite requiring employees to work hours beyond their shift each day, Defendants would only compensate employees based on their scheduled work hours, rather than actual hours worked. Defendants' wage policies resulted in post-shift time-shaving.

7. Plaintiff brings this wage and hour class action on behalf of himself and all persons, who during the applicable limitations period up to and including the present, were similarly

underpaid by Defendants in violation of protections afforded under the FLSA, and the laws and regulations passed in the following states:

1) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq;*

2) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq*; and the New Jersey Wage and Hour Law, N.J.A.C. §§ 12:56-2.1 *et seq;* and

3) Florida: Florida's Unpaid Wages Statute, Fla. State. 448.08 *et seq*.

(Collectively, the "Relevant State Wage and Hour Laws," or "RSWHL")

8. Plaintiff, potential collective members, and putative class members were all victims of Defendants' failure to pay wages, including overtime wages. Defendants instituted a nationwide policy of not compensating wages for all hours worked, including (i) not tracking actual hours worked, and (ii) compensating employees based on a fixed schedule, regardless of whether employees worked longer than their scheduled shifts.

9. Plaintiff brings this wage and hour class action on behalf of himself, and all putative class members employed by Defendants nationwide, who during the applicable state and federal limitations period (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under the FLSA and the regulations of the above states.

10. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty (40) which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of an RSWHL, Plaintiff further alleges that he and others similarly situated are entitled to recover from Defendants, the following pursuant to, as alleged above, breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendants' principal place of business is in the district in which this Court sits.

## PARTIES

13. Plaintiff ROBERTO JOSEPH was and currently is a resident of Kings County, New York.

14. Corporate Defendant SECURITY USA, INC. is a domestic business corporation organized under the laws of the State of New York with a headquarters and principal place of business located at 336 West 37th Street, Suite 450, New York, NY 10018.

15. Corporate Defendant operates at all the sites for which it provides security services through the same executive management team, from the same headquarters with the same policies and procedures:

a. Corporate Defendant maintains a centralized payroll and human resources department managing employees working at any site for which they provide security services. For instance, Corporate Defendant operates a single career page allowing interested persons to apply to positions relating to all sites at which Corporate Defendant offers services. *See* **Exhibit A**, screenshots of Corporate Defendant's career page. All employees are covered under the same wage and hour policies.

b. Corporate Defendant maintains the same website, where visitors can obtain information concerning Corporate Defendant's news, information, and updates concerning Corporate Defendant's corporate affairs. *See* **Exhibit B**, screenshots of Corporate Defendant's website.

c. Employees are interchangeable among Defendants' sites. Defendants frequently transfer employees to different sites during their employment. For example,

Plaintiff worked at one site, Sagamore Woodbury, before being promoted and transferred to a different site, Plainview Country Pointe.

d. Defendants maintain a single set of Facebook and LinkedIn accounts through which they market and advertise Corporate Defendant's services to all current and future job sites. *See* **Exhibit C**, Defendants' Facebook and LinkedIn Accounts. On these social media accounts, Defendants advertise positions across many different job sites. *Id.*

16. Individual Defendant RAMI HAHITTI is the founder, owner, CEO, and principal of Corporate Defendant SECURITY USA, INC. *See* **Exhibit D**, Corporate Defendant's "Our Team" webpage, in which Individual Defendant introduces himself as the "Founder and CEO" of Corporate Defendant. Additionally, Individual Defendant is the registered agent of Corporate Defendant. *See* **Exhibit E**, Corporate Defendant's Entity Information on the New York Department of State Division of Corporations website.

17. Individual Defendant exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of various job sites may complain to Individual Defendant directly regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant set the wage policies for all employees and has the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

18. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the RSWHL and the regulations thereunder.

19. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

20. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

21. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

24. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to security guards, security officers, fire guards, and patrol guards, among others, employed by Defendants in the six (6) years, or the relevant statutory period of each jurisdiction's applicable labor law, before the filing of the Complaint (the "Class Members").

25. All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

27. To the extent necessary, Plaintiff will designate subclasses for each of the states where Defendants have employees.

28. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member

of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages, including overtime, due to time-shaving, (ii) failing to reimburse uniform maintenance costs, (iii) failing to pay spread of hours premiums; (iv) failing to provide wage and hour notices, at date of hiring and annually (as applicable to each state); and (v) failing to provide proper wage statements (as applicable to each state).

29. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

30. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the

wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32. Defendants and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and Class Members;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e) Whether Defendants properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

f) Whether Defendants paid Plaintiff and Class Members for the actual hours that they worked;

g) Whether Defendants paid Plaintiff and Class Members the spread of hours premiums due to them;

h) Whether Defendants provided wage and hour notices to Plaintiff and New York Class Members, at date of hiring and annually, per requirements of the NYLL;

i) Whether Defendants provided proper wage statements to Plaintiff and New York Class Members, per requirements of the NYLL; and

j) Whether Defendants reimbursed Plaintiff and Class Members for uniform maintenance costs incurred.

## STATEMENT OF FACTS

*Plaintiff's Employment Background:*

34. In or around January 2024, Plaintiff was hired by Defendants to work as a security guard. During his employment, he was stationed at various private living communities throughout Long Island. Plaintiff was originally stationed to work at a private living community called The Sagamore at Mills Pond in Woodbury, New York. On or around September 26, 2024, Plaintiff was promoted to Patrolman and transferred to work at a retirement community called Country Pointe Plainview in Plainview, New York. On or around September 29, 2025, Plaintiff was again transferred to work at a veteran's home called Bell Park Manor Terrace in Queens Village, New York where he continued working as a Patrolman. Plaintiff's employment with Defendants ended on or around November 6, 2025, when he was terminated in retaliation for making a lawful complaint regarding Defendants' underpayment of wages.

35. Throughout Plaintiff's employment, Plaintiff was scheduled to work eight (8) hours a day, Monday through Friday, for a total of forty (40) hours every week. Plaintiff's schedule

varied, but he generally worked the 8:00 a.m. to 4:00 p.m. shift. Plaintiff also frequently worked double shifts, which resulted in him working over forty (40) hours per week. Plaintiff would work his scheduled shift and additional hours, for which he was not fully uncompensated. FLSA Collective Plaintiffs and Class Members also worked over forty (40) hours per week.

36. At all times, Plaintiff, FLSA Collective Plaintiffs, and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

37. From the start of his employment to in or around September 2024, Plaintiff was paid a base wage rate of $18.00 an hour. From in or around September 2025 to the end of his employment, Plaintiff was paid a base wage rate of $19.00 an hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

*Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage Claims:*

38. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' time-shaving, in violation of the FLSA and the RSWHL.

39. Defendants required Plaintiff to clock out as soon as his replacement guard arrived. Despite clocking-out, Plaintiff was still required to stay approximately fifteen (15) minutes after every shift to conduct "hand over" duties with the incoming guard, which included briefing the replacement on the events and issues that occurred during Plaintiff's shift. Because Plaintiff had already clocked out, this post-shift work was not recorded, and Plaintiff was paid only for his recorded hours. As a result, Plaintiff was not compensated for approximately fifteen (15) minutes of work for each shift he worked. FLSA Collective Plaintiffs and Class Members were similarly required to perform uncompensated hand over duties after clocking out.

40. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members

for all hours they worked, due to Defendants' policy of time-shaving, in violation of the FLSA and the RSWHL.

41. Plaintiff and Class Members were required to wear uniforms, which must be clean every day to work for Defendants. The uniform was either a security vest or a shirt with Defendants' logo on it, neither of which can be worn outside of work as regular clothes. Defendants did not launder or maintain their required uniforms. Plaintiff was required to clean his uniforms weekly at his own expense. Defendants did not reimburse Plaintiff for his uniform maintenance costs. Class Members were similarly required to pay for uniform maintenance costs on a weekly basis. At all times, Defendants failed to reimburse Plaintiff and Class Members for their uniform maintenance costs in violation of the NYLL.

42. Further, at all relevant times, Defendants failed to provide Plaintiff and Class Members with their proper spread of hours premiums owed for workdays lasting 10 or more hours, in violation of the NYLL.

43. Throughout his employment, Plaintiff regularly worked double shifts exceeding 10 hours. However, Defendants never paid any spread of hours premiums to Plaintiff for each workday exceeding 10 hours in length.

44. At all relevant times, Defendants similarly failed to provide any spread of hours premiums to Class Members for their workdays lasting 10 or more hours.

*<u>Plaintiff's and Class Members' Wage Theft Prevention Act Claims:</u>*

45. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Prevention Act ("WTPA")—incorporated into the NYLL—including, but not limited to, NYLL §§ 195(1) and 195(3).

46. At all relevant times, Defendants failed to provide Plaintiff and Class Members with the wage notices required at the time of hire and annually thereafter, including but not limited to wage notices reflecting actual rates of pay, allowances claimed by Defendants (including any tip credit, meal credit, or uniform allowance), the regular pay day, and other information required under NYLL § 195(1).

47. At all relevant times, Defendants' wage statements (to the extent any were provided) failed to accurately reflect, among other things, the actual hours worked by Plaintiff and Class Members and the uniform maintenance allowance owed under NYLL § 195(3) and 12 NYCRR § 146-2.3.

48. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that it later reported to the IRS through the employees' W-2 forms, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants was able to hide from them by failing to provide them with proper wage statements.

49. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing

for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

50. New York courts continue to find sufficient standing to support these claims. As one such court stated at summary judgment in *Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026):

> Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that 'Defendants' violations impaired their ability to seek relief due to a lack of information.' More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in Guthrie. Therefore, the Court finds for Plaintiffs on this issue. (internal citations omitted).

51. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked, the actual rates that they were paid, the tip credit and other allowances claimed against their wages, and the call-in and uniform allowances owed to them, Defendant was able to hide its wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendant provided proper wage statements and notices to Plaintiff and Class Members, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

52. Defendants knowingly and willfully operated its business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

53. Defendants knowingly and willfully operated their business with a policy of not properly compensating the appropriate overtime rates (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class Members, including due Defendants' policy of time-shaving.

54. Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to time-shaving of hours worked in violation of the FLSA and the state wage laws.

*Plaintiff's Individual Claim for Breach of Contract and Unjust Enrichment:*

55. As alleged above, in or around September 2024, Plaintiff was promoted to Patrolman and was transferred to a retirement community in Plainview, New York. In connection with the promotion and transfer, Plaintiff's Managers Nancy [LNU] and John [LNU] informed Plaintiff that he would be paid at an hourly rate of $19.60. Plaintiff agreed to the promotion and transfer in reliance upon Defendants' promise to compensate him at that rate. Despite the agreement, Defendants failed to pay Plaintiff $19.00 per hour and instead continued to compensate Plaintiff at a rate of $18.00 per hour.

56. Then, in or around September 2025, Plaintiff was transferred to a veteran's home in Queens Village, New York. In connection with this transfer, Plaintiff and Manager Israel [LNU] agreed that Plaintiff would be paid at an hourly rate of $19.60. However, Defendants again failed to pay Plaintiff at the promised rate, instead only raising his compensation to $19.00. Again, Plaintiff relied upon Defendants' promise to compensate him at a higher rate when accepting his transfer to Queens Village.

57. By failing to pay Plaintiff his promised wage, Defendants breached Plaintiff's oral employment contract.

58. Further, by retaining the difference between the amount of promised wages and the amount actually paid to Plaintiff, Defendants unjustly enriched themselves at the expense of Plaintiff.

*Plaintiff's Individual Claim for Retaliation Under FLSA and the NYLL:*

59. Beginning in October 2025, Plaintiff made complaints to Defendants regarding Defendants' failure to increase his wage to $19.60 as promised. After making these complaints, and in retaliation for his complaint, Defendants terminated Plaintiff's employment. Plaintiff was unjustly retaliated against for lawfully raising a complaint with Defendants regarding his wages.

60. Defendants violated anti-retaliation laws of the FLSA and the NYLL for terminating Plaintiff for making a lawful complaint.

61. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

62. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

63. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

64. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

65. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.00.

66. At all relevant times, Defendants had a policy and practice of failing to pay wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked due to time-shaving in violation of the FLSA.

67. Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

68. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked, when Defendants knew or should have known such was due to Defendants' policy of time-shaving.

69. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

70. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

71. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time-shaving; plus an equal amount as liquidated damages.

72. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

73. Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

74. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

75. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and Class Members all wages, including overtime, due to time-shaving, in violation of the NYLL, including §198 and §663.

76. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time-shaving in violation of the NYLL, including § 198 and § 663.

77. Defendants knowingly and willfully failed to provide accurate wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Class Members, as required by NYLL § 195(1).

78. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by NYLL § 195(3). Defendants

provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiffs and Class Members.

79. At all relevant times, Defendants had a policy and practice of failing to reimburse Plaintiff and Class Members for uniform maintenance costs, in violation of the NYLL.

80. Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than 10 hours in duration, in violation of the NYLL.

81. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to time-shaving; damages for unreasonably delayed payments; unreimbursed uniform maintenance costs; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

**COUNT III**

**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**
**(brought on behalf of a Rule 23 Class)**

82. Plaintiff repeats and re-alleges every previous allegation in this complaint as if fully set forth herein.

83. At all relevant times, Class Members were employed by Defendants within the meaning of the RSWHL, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

84. Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the RSWHL enumerated earlier are identical for purposes of their overtime class claims.

85. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, including the proper overtime compensation at rates

of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due to a policy of underreporting employees' hours, in violation of the RSWHL outlined above.

86. Defendants knowingly and willfully failed to provide proper wage statements and notices to Subclass members, as required under the laws of New York.

87. Due to Defendants' RSWHL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid compensation for all hours worked, unpaid overtime premiums, damages for unreasonably delayed payments, unreimbursed uniform maintenance costs, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

88. In addition to violations of RSWHL overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated RSWHL provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass Class Members' claims.

89. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions.); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.").

## COUNT IV

## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

90. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

91. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

92. Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint [. . .] under or related to this Act."

93. As alleged herein, Plaintiff complained to Defendants regarding unpaid wages. In response to such complaints, Defendants terminated Plaintiff under pretextual reasons in violation of Section 15(a)(3).

94. Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

95. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

**COUNT V**

**RETALIATION UNDER NEW YORK LABOR LAW**

96. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

97. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL and was a person covered by and intended to benefit from the provisions of the NYLL.

98. Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him shortly after he raised concerns about Defendants' unlawful policies regarding unpaid wages.

99. In response to such complaints, Defendants terminated Plaintiff in violation of Section 215(1)(a).

100. Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner

101. Defendants' conduct was in willful disregard of the provisions of the NYLL.

102. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these

damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided for under the NYLL.

**COUNT VI**

**BREACH OF CONTRACT**

103. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

104. Defendants' failure to pay Plaintiff the promised wage constitutes a material breach of Plaintiff's employment contract with Defendants.

105. As a result, Plaintiff has been damaged in an amount to be proven at trial. Defendants must pay this sum to Plaintiff, along with an award of interests, costs, and attorneys' fees.

**COUNT VII**

**UNJUST ENRICHMENT**

106. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

107. By virtue of Defendants' conduct as alleged herein, and Plaintiff's performance of their contractual obligations to Defendants, Defendants were unjustly enriched by (i) failing to pay Plaintiff the promised wage, (ii) failing to pay Plaintiff for all hours of work, and (iii) retaining the difference between what Defendants should have paid Plaintiff and what was actually paid to him. Defendants intentionally failed to pay Plaintiff promised wages and his all hours of work, and retained the difference between what they should have paid Plaintiff and what was actually paid to them.

108. The circumstances are such that it would be inequitable to allow Defendants

to retain the excess benefits they gained from Plaintiff without paying fair value for their work.

109. As a direct and proximate result of Defendants' wrongful retention of Plaintiff's wages, Plaintiff sustained damages in an amount according to proof at trial.

110. Defendants' prevailing wage retention was done with malice and in conscious disregard of Plaintiff's rights, with the intent to cause financial injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the RSWHL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due under the FLSA and the RSWHL;

d. An award of spread of hours premium due under the NYLL;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the RSWHL;

f. An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements;

g. An award of unreimbursed uniform maintenance costs, due under the RSWHL;

h. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

i. An award of back pay, front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL;

j. An award of all owed benefits owed pursuant to the RSWHL;

k. An award of damages for Defendants' breaches of employment contracts;

l. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

m. Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

n. Designation of this action as a class action pursuant to F.R.C.P. 23;

o. Designation of Plaintiff as Representatives of the Class; and

p. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**NY BCL §630 NOTICE AND DEMAND**

Plaintiff hereby gives this notice, in writing, to each shareholder of Corporate Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the Defendants upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: October 7, 2026

Respectfully submitted,

By: *<u>/s/ C.K. Lee</u>*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*